ROBERTSON, Justice.
Appellants, Dalton R. Matheny and Mrs. Arnold Franklin, the beneficiaries in a life insurance policy on the life of James R. Jordan, brought suit in the Chancery Court of the First Judicial District of Hinds County, Mississippi, against appellee, Massachusetts Mutual Life Insurance Company, to recover the sum of $80,000, the face amount of the policy with accidental death benefits. The chancellor found that the policy had lapsed for nonpayment of premium and dismissed the' bill of complaint. The appellants appeal.
Dalton R. Matheny and James R. Jordan were partners in the restaurant business. Jordan operated the Billups Restaurant near Jackson, Mississippi, and Matheny operated the Billups Restaurant near Alexandria, Louisiana. U. Grey Flowers, a soliciting agent for appellee, who worked out of the E. W. Hughes General Agency in Jackson, Mississippi, sold two life insurance policies to the partnership. Ma-theny owned the policy on Jordan’s life, and Jordan owned the policy on Matheny’s life. Both policies were in the same face amount, and all premiums for both policies were to be paid out of the partnership bank account in the Deposit Guaranty National Bank in Jackson, Mississippi.
After the partners finally determined what kind and type of policies they desired and after the initial premiums had been paid, Matheny and Jordan both signed a “Request for Triple M Plan” of premium payment. Both Requests were dated January 8, 1963, and the Triple M Plan for *691 the policy on the life of Matheny was signed by Jordan as depositor and Jordan as owner. The Triple M Plan for the policy on the life of James R. Jordan was signed by Jordan as depositor and Ma-theny as owner. Both requests listed the same bank account, “40-338-61, Deposit Guaranty Bank & Trust Company, Jackson, Mississippi,” as the partnership account on which appellee should draw checks in payment of monthly premiums.
Each request, identical in language, recited :
“Massachusetts Mutual Life Insurance Company of Springfield, Massachusetts, is requested to draw checks on the account of the undersigned depositor in the bank named under the Company’s Triple M Plan for the purpose of paying premiums on the policies shown below, subject to the following conditions: (1) Premiums shall be payable monthly and the Company shall not be required to give notice of premiums becoming due. (2) One check shall be drawn on a fixed date for the total of all premiums due during the month under the plan. (3) The total amount of premiums due shall not be less than $10.00 a month. (4) Any election of the Automatic Premium Loan provision or the Reduction of Premium divident option shall be inoperative while premiums are payable monthly. (5) The policies may be removed from the Triple M Plan if within any one year period any tivo checks are not paid upon presentation. (6) The Triple M Plan may be terminated by the premium payor or by the Company by providing the other party with thirty days written notice of such termination.” (Emphasis added).
The monthly premium on the Jordan policy was $52.80 per month, Jordan being much younger than Matheny; the monthly premium on the Matheny policy was $108.-19 a month. In order to preserve the 34-year insurable age of Jordan (which would result in a substantial saving to the partnership), the appellee was requested to backdate the policy to September 24, 1962, in the application therefor, the application being signed, by James R. Jordan as the insured and Dalton R. Matheny as the purchaser. Appellee dated the policy September 24, 1962, as requested, and the application was attached to and made a part of the policy on the life of Jordan. The policy on the life of Matheny was dated December 20, 1962.
Realizing that it would take some time to investigate and pass on the applications for insurance and the requests for special plans of premium payment, and to issue the policies, the initial premiums were paid by partnership checks drawn by Jordan and handled by the E. W. Hughes Agency, the general agency of the appellee in Jackson, Mississippi. In balancing out the premium payments made through it, the Hughes Agency refunded $7.66 to James R. Jordan and $11.40 to Dalton R. Matheny. This was done by agency checks which were accepted and' cashed by Jordan and Ma-theny. Beginning January 8, 1963, all premium payments were made to Massachusetts Mutual and all transactions were handled through the home office of Massachusetts Mutual in Springfield, Massachusetts. The “Bank Authorization to Honor Checks Drawn by Massachusetts Mutual Life Insurance Company” signed by “J. R. Jordan” on January 8, 1963, contained this language:
“Such authority shall remain in effect until revoked by the undersigned in writing and until you receive such notice, it is agreed that you shall be fully protected. You shall be under no liability whatsoever if any such check be dishonored, whether with or without cause, and whether intentionally or inadvertently even though such action results in forfeiture of insurance.” (Emphasis added).
On March 1, 1963, the appellee drew a draft on the partnership account in the Deposit Guaranty for $216.38 to pay the premiums due January 20 and February *692 20, 1963, on the Matheny policy and on March 15, 1963, the appellee drew a draft on the partnership account for $52.80 to cover the premium due February 24, 1963, on the Jordan policy. These drafts were honored by the bank, and premiums were thus paid to March 20, 1963, on the Ma-theny policy and to March 24, 1963, on the Jordan policy. Both policies and the requested plans of payment were now “in cycle” and henceforth, in accordance with the plan, one draft would be drawn on the bank to cover both monthly premiums.
On March 20, 1963, the appellee at its home office in Springfield, Massachusetts, drew a draft on the partnership account in the Deposit Guaranty Bank for $160.99, covering the monthly premium of $108.19 due March 20, 1963, on the Matheny policy and the monthly premium of $52.80 due March 24, 1963, on the Jordan policy. On March 29, 1963, this check was returned unpaid by the Deposit Guaranty because of insufficient funds in the partnership account, and the partnership account was charged an additional $2.00 service charge by the bank.
On April 5, 1963, the appellee drew a second draft for $160.99 to cover the March, 1963, premiums on both policies. This check was also dishonored because of insufficient funds and was returned to the appellee at its home office on April 23, 1963. The partnership account was again charged a special $2.00 service charge by the bank.
On April 22, 1963, before the second draft was returned unpaid, Massachusetts Mutual drew a third draft for $160.99 for the April, 1963, premiums on both policies; this check was likewise dishonored because of insufficient funds in the partnership account and was returned to the ap-pellee in Springfield, Massachusetts, on May 3, 1963. Again the partnership account in the Deposit Guaranty was charged with a special $2.00 service charge for the third bad check.
The life policy on Jordan lapsed on April 24, 1963, when the 31-day grace period expired. The 31-day grace period for the life policy on Matheny also expiring, that policy lapsed on April 20, 1963.
Each policy contained this reinstatement clause:
“Reinstatement. This policy may be reinstated during the lifetime of the insured unless it has been surrendered for its cash surrender value: (a) within 31 days after the expiration of the grace period for the premium in defaidt, without evidence of insurability; * * *.” (Emphasis added).
Jordan was killed in a one-car automobile accident about 4:05 a. m., May 20, 1963, when he lost control of his car and wrecked it near Covington, Louisiana. Knowing this, Appellant Matheny at the partnership restaurant near Jackson, Mississippi, on the afternoon of May 20th, tendered to U. Grey Flowers, soliciting agent for the ap-pellee, a partnership check for $492.44 for a quarterly premium on both the Jordan and Matheny policies. Matheny backdated this check to May 17, 1963. Flowers immediately delivered the check to the E. W. Hughes Agency, who promptly forwarded it to the home office in Springfield, Massachusetts. On May 29, 1963, appellee from the home office wrote Mr. Matheny:
“We have received a check signed by you in the amount of $492.44. This check was handed to Mr. U. Grey Flowers on May 20, 1963. This check, we understand, was intended to pay a March 24, 1963, quarterly premium under Policy No. 3 743 705 on the life of James R. Jordan and also to pay a March 20, 1963, quarterly premium under Policy No. 3 743 627 which was issued on your life. The premium in connection with Mr. Jordan’s policy could not be accepted when the check was presented to Mr. Flowers because at that time Mr. Jordan was dead. The check was not for the correct amount of the March premium under the policy on your life and, there *693 fore, is returned with this letter. Policy No. 3 743 705 on the life of Mr. Jordan lapsed for nonpayment of the March 24, 1963, premium, and there was no insurance in force at the time of Mr. Jordan’s death on May 20, 1963. * * * ”
The appellants contend: (1) The appel-lee had an absolute duty to give notice to appellant Matheny before cancelling the policy on the life of Jordan; (2) The Triple M Plan required a 30-day written notice before termination; and (3) The acceptance of the $492.44 check by U. Grey Flowers at the time and under the conditions then prevailing constituted a waiver on the part of the appellee.
We note particularly three of the provisions in the Requests for Triple M Plan signed by both Jordan and Matheny:
“(1) Premiums shall be payable monthly and the Company shall not be required to give notice of premiums becoming due. (2) One check shall be drawn on a fixed date for the total of all premiums due during the month under the plan.
(5) The policies may be removed from the Triple M Plan if within any one year period any tivo checks are not paid upon presentation. * * * ” (Emphasis added).
It is clear from (1) that appellee was not required to give notice of monthly premiums becoming due. It is also clear from (2) that the intent and purpose was for appellee to draw one check on a fixed date for all monthly premiums due. Appellee followed through on these provisions; appellants did not. With reference to the applicability of (5) the chancellor in his written opinion had this to say:
“No. (5) says: ‘The policies may be removed from the Triple M Plan if within any one year period any two checks are not paid upon presentation.’ No. (6) says: ‘The Triple M Plan may be terminated by the premium payor or by the Company by providing the other party with thirty days written notice of such termination.’ The latter, or No. (6), was a means of termination if payments were made as agreed and in the event either party desired or wanted to change the method of payment. No. (5) was automatic when any two checks in one year were not paid when presented. Notice was not required in this plan if two checks were not paid upon presentation. It is a matter of evidence that three checks were presented in payment of premiums and were not paid. Therefore, failure to give thirty days notice did not prevent a lapse and was not a waiver of the right to claim a lapse.”
We agree with the reasoning of the chancellor that Paragraph (5), and not Paragraph (6), applied under the facts of this case.
As to the contention of the appellants that the acceptance of the $492.44 check by U. Grey Flowers on May 20, 1963, constituted a waiver, it is only necessary to note the plain provisions of the insurance contract. The policy on the life of Jordan provided:
“Premiums are payable in advance. All premnims after the first are payable on their due dates at the Home Office or to an agent or cashier holding the Company’s official receipt signed by the Secretary or an Assistant Secretary.
“The due date of a premium is the date on which it is payable. A default in premium payment will occur upon nonpayment of any premium on its due date. If any premium in default is not paid before the end of the grace period, this policy lapses and terminates as of the due date of the premium in default and has no value except as provided under Guaranteed Surrender and Nonforfei-ture Provisions.” (Emphasis added).
Flowers clearly understood the limitations of his authority set forth in his written contract with the Hughes Agency, and testified that he so advised Matheny. *694 Flowers was simply a soliciting agent authorized to solicit applications for insurance from would-be insured and upon approval by the home office to receive and receipt for the initial premium only.
In order to reinstate the policy on the life of Jordan, it was necessary for Ma-theny to tender to the home office or the Hughes general agency during the lifetime of Jordan the quarterly premium. This was made perfectly clear in the very policy itself. This the appellants failed to do. The chancellor was correct in dismissing the bill of complaint, and the judgment of the chancery court is affirmed.
Affirmed.
ETHRIDGE, C. J., and JONES, BRADY and INZER, JJ., concur.